UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DANIEL TREVINO,            )
                           )
        Plaintiff,         )
                           )
   vs.                     )   Case number 4:05cv1736 TCM
                           )
MAKITA U.S.A., INC., and   )
HOME DEPOT U.S.A., INC.,   )
                           )
        Defendants.        )

## MEMORANDUM AND ORDER

This diversity action is before the Court on motions by defendants, Makita U.S.A., Inc. ("Makita") and Home Depot, U.S.A., Inc. ("Home Depot") for summary judgment; to exclude an expert report filed by plaintiff, Dan Trevino; and a motion to bar Dr. Kenneth Blundell from testifying at trial. [Docs. 29, 35, 49] Also pending is a motion by Plaintiff for leave to file Dr. Blundell's report out of time. [Doc. 40] An issue in each of the pending motions is the reliability and admissibility of Dr. Blundell's opinion about a table saw blade guard.

### Background

Plaintiff was using a Makita Table Saw, Model No. 2708 ("the Table Saw"), at home on August 27,[1] 2000, when his left index finger was severed by the saw and his left middle finger was partially severed. (Pl. Interrogs. ¶¶ 2, 5, 16.) The middle finger was later removed at the hospital. (Id. ¶ 16.)

---

[1] In his unverified complaint, Plaintiff alleges he was injured on August 30. The Court will assume the correct date is that given in his sworn answers to interrogatories.

On August 19, 2005, Plaintiff filed suit against Makita and Home Depot, from whom he had purchased the Table Saw,[2] alleging a cause of action against Makita for strict liability and negligence and a cause of action against Home Depot for strict liability, negligence, and negligently supplying a dangerous instrumentality. Plaintiff specifically alleged that his injuries were attributable to the lack of "proper safety devices and safety protection to prevent a user's fingers or hands from being injured by the saw blade" and to the lack of adequate warnings about this danger. (Compl. Ct. I, ¶ 9(b); Ct. III, ¶ 3(c); Ct. IV, ¶ 3(c); Ct. V, ¶ 3(c); Ct. VI, ¶ 3(b).)

In September 2006, Plaintiff named Dr. Blundell as a liability expert in his Rule 26(a)(1) disclosures. Asked in interrogatories to describe each defect he claimed existed in the Table Saw, each deficiency in any warning or instruction accompanying the Table Saw, and each law, regulation, and industry standard, custom or practice violated by the Table Saw, Plaintiff replied that each question "calls for an expert opinion, which is discoverable by deposition only." (Interrogs. ¶¶ 24-26.)

Disagreeing with Plaintiff, Makita and Home Depot ("Defendants") moved for summary judgment based on the lack of an opinion by any expert witness linking the design of the Table Saw or its accompanying warnings and instructions to Plaintiff's injuries. In support of their motion, Defendants submitted the report of James E. Hyde, Jr. (Defs. Ex. 3.) Mr. Hyde states that he has both inspected an exemplar Makita 2708 and has owned and used one for several years. (Defs. Ex. 3 at 5, 6.) Based on the information available to him, including the complaint, Plaintiff's answers to interrogatories, and a letter from Plaintiff's

---

[2]Plaintiff also named Makita Corporation of Japan as a defendant. This defendant has since been dismissed by Plaintiff.

- 2 -

counsel, he concluded that the Table Saw "design, safeguarding, warnings and instructions are reasonably fit, safe and suitable for the saw's intended purpose." (Id. at 7.) He also concluded that the description of the accident and the documentation and physical evidence were inconsistent with the use of a blade guard assembly. (Id.)

In response, Plaintiff submitted the verified report of Dr. Blundell. Dr. Blundell inspected the Table Saw, met with Plaintiff, and reviewed some photographs. (Pl. Ex. 1 at 1.) Plaintiff informed him that the blade guard was no longer available, having not been used after the accident and having since been broken and discarded. (Id. at 1-2.) Dr. Blundell states that "[a]t the time of the accident, the saw was operating with a flexible, Plexiglas blade guard." (Id. at 1.) He attributes Plaintiff's injuries to this blade guard. (Id. at 2.) He concludes that the performance of a polycarbonate blade guard is "usually sub-standard" because the guard is "easily, inadvertently deflected during use." (Id.) This results in the guard being pushed into the blade, causing reduced visibility and premature failure. (Id.) The light weight of the guard also causes it to be easily displaced. (Id.) Dr. Blundell opines that the Table Saw was "unreasonably dangerous since it had a blade guard that was capable of being easily deflected and prone to breakage." (Id.) Safer alternatives were available. (Id.) Attached to Dr. Blundell's reports are photographs of the Table Saw taken in October 2005.

In an affidavit, Mr. Hyde responds that the blade guard that came with the Table Saw "incorporates clear polycarbonate plastic and has metal sides painted safety orange." (Defs. Ex. C at 1.) The metal sides weigh more than the polycarbonate portion of the guard. (Id. at 2.) The blade guard is not, as described by Dr. Blundell, exclusively made of polycarbonate. (Id.)

In a proposed sur-reply, Plaintiff refers to his own affidavit averring that the blade guard that came with his Table Saw had a polycarbonate top and polycarbonate sides. (Sur-reply at 3.) "This is the type of blade guard on which Dr. Blundell based his opinions." (Id.) Plaintiff also refers to an affidavit of Dr. Blundell that he is aware that Makita has made a blade guard for table saws similar to the one at issue that is made entirely of clear plastic. (Id. at 4.) Plaintiff did not, however, submit either supporting affidavit, although the omission was noted by Defendants in March.[3]

Thus, the Court must begin its analysis of whether Dr. Blundell's report and aligned testimony will be admissible under Federal Rule of Evidence 702 with two assumptions: (1) the Table Saw at issue had a polycarbonate blade guard with metal sides and (2) Dr. Blundell based his opinions on an all-polycarbonate blade guard.

## Discussion

The trial court is required by the Federal Rules of Evidence to ensure that all specialized testimony or evidence admitted at trial is relevant and reliable. **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 589 (1993). "The primary locus of this obligation is Rule 702." **Id.** Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[3]The absence of the two affidavits that were the substance of the proposed sur-reply were the basis for leave to file it being denied in May.

The required determination of whether the proffered expert is proposing to testify to specialized knowledge that will assist the trier of fact in understanding or determining a fact in issue "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." **Daubert**, 509 U.S. at 592-93. This inquiry is a flexible one "'tied to the facts' of a particular case," **Kumho Tire Co. v. Carmichael**, 526 U.S. 137, 150 (1999) (quoting Daubert, 509 U.S. at 591), and focuses "solely on principles and methodology, not on the conclusions that they generate," **Daubert**, 509 U.S. at 595. "Thus, a district court is not free to choose between the conflicting views of experts whose principles and methodology are reliable and relevant." **National Bank of Commerce of El Dorado v. Associated Milk Producers, Inc.**, 191 F.3d 858, 862 (8th Cir. 1999).

> Ultimately, the Daubert Court endorsed the traditional means of testing evidence in the adversary system rather than the wholesale exclusion of evidence under an uncompromising test – "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

**Id.** (quoting Daubert, 509 U.S. at 596) (alteration in original).

In **Daubert**, the Supreme Court outlined four factors that the district court may[4] consider when determining whether to admit expert testimony: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected

---

[4] Before discussing the four factors, the Supreme Court first expressed confidence "that federal judges possess the capacity to undertake [the necessary] review" of the proffered expert testimony and disclaimed any presumption that its factors were to be construed as a definitive checklist. **Daubert**, 509 U.S. at 593 (alteration added). Thus, the four factors outlined by the Court are not a definitive checklist or test. See **Kumho Tire Co.**, 526 U.S. at 149-50.

to peer review and publication; (3) the known or potential rate for error; and (4) whether the theory or technique has received general or widespread acceptance. **Id.** at 593-94. And, although the Daubert test applies to "many different kinds of expertise," **Kumho Tire Co.**, 526 U.S. at 150, "[t]he factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony," **id.** (alteration in original) (interim quotations omitted).

Before the Daubert analysis comes into play in cases of product liability, however, there must be a consensus of what product is at issue. See Fed.R.Evid. 702(3) (requiring that an expert witness has reliably applied sound principles and methods "*to the facts of the case*") (emphasis added).

Although "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony," **Bonner v. ISP Tech., Inc.**, 259 F.3d 924, 929 (8th Cir. 2001) (alteration added), the factual dispute at issue in this case goes to the threshold question whether that opinion "is sufficiently reliable and relevant to assist the jury's determination," **id.** Mr. Hyde avers that the blade guard used with the Table Saw is polycarbonate plastic with metal sides. He further avers that this blade complies with applicable, national standards and is not defective. Plaintiff represents that he has an affidavit that the blade guard that came with his saw had polycarbonate sides and an affidavit by Dr. Blundell that he is aware that Makita table saws came with such blade guards. Defendants' expert does not speak of the safety of a blade guard with polycarbonate sides; Plaintiff's expert does not speak of the safety of a blade guard with metal sides. Defendant's expert's opinion is before the Court in the form of an affidavit; Plaintiff's is not.

Because a dispute exists as to whether Plaintiff's expert examined the right product and because this dispute appears to control the resolution of the Daubert issue,[5]

**IT IS HEREBY ORDERED** that a hearing shall be held on **June 11, 2007**, at **9:00 a.m.** in Courtroom 13N on the admissibility of Dr. Kenneth Blundell's expert testimony.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of May, 2007.

---

[5]The Court is not insensitive to Defendants' reasonable frustration with Plaintiff's failure to comply with deadlines and or to file necessary supporting documentation. The Court will not, at this stage of the proceedings, extinguish Plaintiff's day in court for this failure.